IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY A. SMITH,

                Plaintiff,                         OPINION AND ORDER

v.

                                                          12-cv-96-wmc

KAREN BUTLER,

                Defendant.

---

The court granted plaintiff Gary A. Smith, a former inmate at the Rock County Jail, leave to proceed on a claim that defendant Dr. Karen Butler, a physician at the Rock County Jail, acted with deliberate indifference in violation of Smith's Eighth Amendment rights by: (1) denying him medical treatment after he experienced a stroke; and (2) denying him the specific diet prescribed for him by a physician after his stroke. (9/20/13 Opinion & Order (dkt. #17).) Before the court is defendant's motion for summary judgment, which plaintiff failed to oppose despite being given numerous opportunities to do so. There appearing to be no facts of record in which plaintiff could prevail, the court will grant defendant's motion for summary judgment and close this case.

UNDISPUTED FACTS[1]

Plaintiff Gary Smith was incarcerated at Rock County Jail while defendant Karen. Butler served as a jail physician. After he was observed slumped over on a set of stairs on January 18, 2012, Smith was transported to Mercy Hospital. The hospital records from that day indicate that Smith had complained of a severe headache and weakness before

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed.

being found slumped over the stairs and "was noted to have a left sided facial droop and left sided neglect." (Affidavit of Nicolas Harken ("Harken Aff."), Ex. B (dkt. #26-2) p.1.) According to the hospital notes, Smith also reported to the hospital staff that the symptoms he experienced were similar to those he had experienced with a Transient Ischemic Attack ("TIA") in October of 2011.[2]

During Smith's two-day stay at Mercy Hospital, several tests were performed. None provided an objective indication that Smith had suffered a neurological or other medical event. Specifically, Smith's CT scan was "normal." (Harken Aff., Ex. C (dkt. #26-3).) An ultrasound of Smith's carotid and vertebral arteries also failed to reveal any signs of a TIA or other medical event. (Harken Aff., Ex. D (dkt. #26-4) (noting "no evidence of significant plaque;" "no hemodynamically significant stenosis;" and "no evidence of disease of the carotid bifurcation").) Smith's MRI was normal as well, showing "no evidence of restricted diffusion" and "no evidence of acute hemorrhage." (Harken Aff., Ex. E (dkt. #26-5).)

In addition, the hospital records raise questions about Smith's credibility, specifically noting concerns about whether he was accurately reporting his own symptoms. (*See, e.g.*, Harken Aff., Ex. B (dkt. #26-2) p.6 ("Obtaining a hx and exam is difficult with Gary as he has had varying presentations during his evaluation thus far making one question behavior for greater gain."); *id.* at p.7 ("Patient states that he

---

[2] "A transient ischemic attack (TIA) is like a stroke, producing similar symptoms, but usually lasting only a few minutes and causing no permanent damage." "Transient ischemic attack," Mayo Clinic, *available at* http://www.mayoclinic.org/diseases-conditions/transient-ischemic-attack/basics/definition/con-20021291 (last visited Nov. 12, 2014). (*See also* Harken Aff., Ex. G (dkt. #26-7) at p.4.)

cannot move his left arm or left leg, however, his urinal is sitting on the floor 2 feet away from the bed with approx 400 ml in it and the cover is clicked shut. No one assisted him with voiding or ambulating."); *id.* (describing Smith's responses as "inconsistent" and noting "CNA said he lifted his left (paralyzed) left for her to put his SCD back on").) The occupational therapist also noted that "there is some question as to if [Smith] is malingering, and some inconsist[e]ncies with his symptoms." (Harken Aff., Ex. F (dkt. #26-6) p.2.)

On January 19, 2012, Smith was released from the hospital and returned to Rock County Jail. Smith's "After Visit Summary" from the hospital prescribed Tricor, a cholesterol-lowering medication; instructed him to follow-up with his physician within one week; and also indicated that he should follow-up with Mercy's sports medicine and rehabilitation department. (Harken Aff., Ex. G (dkt. #26-7) p.1.)[3]

On January 22, 2012, three days after returning to jail, Smith filed a grievance stating that he "was told by nursing staff that the Doctor here at [Rock County Jail] who[] I never [saw] denied me . . . the medication prescribed by the Mercy Doctor and also told [me] that I wouldn't be allowed physical therapy." (Harken Aff., Ex. H (dkt. #26-8).) On January 25, a nurse responded: "Medications were cleared by jail Doctor and are being given as ordered. We do not stock every med here. They needed to be ordered. Your medical condition will be monitored and hand out will be given for exerci[x]es." (*Id.*)

---

[3] Based on the instruction that Smith follow-up with Mercy for physical therapy, defendant reasonably infers that the physician who completed the form was likely unaware of Smith's incarceration.

3

The next day, January 26, Smith filed a second grievance, complaining that he had not seen the doctor and had yet to be taken to physical therapy. (Harken Aff., Ex. I (dkt. #26-9).) On January 30, Sergeant Egger noted the following with respect to his grievance: "Nurse Andi responded to your first grievance and explained to you that they will be providing you with exercises for the physical therapy. The jail doctor reviews your medical records and determines your needs based on that. If you wish to see the jail doctor[,] fill out a medical slip." (*Id.*)

Smith filed a third grievance on January 31, 2012, stating that he had asked to see the doctor several times, but had not seen her to date and that the exercise forms he was given do not address the problem with his foot. (Harken Aff., Ex. J (dkt. #26-10).) A nurse responded to his grievance the following day, indicating that Smith was on the list to see the doctor and that she will evaluate him soon. (*Id.*)[4]

On February 2, 2012, Dr. Butler met with Smith. Her notes indicate that she assessed Smith's left foot and also discussed with Smith the possibility he may have suffered a TIA. Butler's notes also indicate "no atrophy" in Smith's foot and that she did not "find any deficiency on exam." (Harken Aff., Ex. L (dkt. #26-12).) Dr. Butler also "suspect[ed] malingering." (*Id.*) Still, she referred Smith to a neurologist for further assessment. (*Id.*)

Apparently, Smith was dissatisfied with his examination by Dr. Butler, filing yet another grievance that same day. (Harken Aff., Ex M (dkt. #26-13.) In this grievance,

---

[4] Before he was seen, Smith filed a fourth grievance on February 1, 2012. (Harken Aff., Ex. K (dkt. #26-11).) A captain responded on February 3, 2012, noting the February 2, 2012, appointment with Dr. Butler. (*Id.*)

4

Smith asked to be seen by an outside physician and requested a referral to the physical therapist recommended by Mercy. (*Id.*) The next day, on February 3, 2012, a nurse responded to Smith's grievance:

> As Dr. Butler explained to you, there was no evidence in your exam from the hospital of a stroke. She has been following your care since your return from the hospital. The medication recommended by the hospital physician was ordered and you are receiving it, and we are also monitoring your activity. [Dr. Butler] has ordered fasting labs to be done as well as a neurology consult. That appointment is being made. We are unable to provide you with that date per security policy. Your previous grievances have been answered and returned to you.

(*Id.*)

On March 5, 2012, Smith saw a Mercy neurologist, Dr. Khabbaz. In his notes, Dr. Khabbaz observed that the weakness Smith experienced on the date of his hospitalization had resolved within one day. (Harken Aff., Ex. N (dkt. #26-14) 1.) Dr. Khabbaz also reviewed the tests from Smith's hospitalization and noted that they were normal. (*Id.*) Dr. Khabbaz did "not have a clear explanation for the patient's symptoms at this point in time," but concluded that for an "ischemic event to cause th[e] problem with [Smith's] foot should involve the anterior cerebral artery territory and we do not see that on the MRI. . . . The foot is dystonic and sometimes acute dystonia can occur related to a small ischemic event but the findings and the complaints of sensory abnormalities does not fit into this." (*Id.* at p.2.)

Smith filed this action on February 13th. He was released from custody on July 10, 2012.

OPINION

The well-established law surrounding plaintiff's deliberate indifference claim is as set forth in this court's opinion and order screening Smith's complaint to go forward. For plaintiff to survive summary judgment on his claim that Dr. Butler was deliberately indifferent to his serious medical needs, he is required to provide evidence from which a reasonable jury could find that (1) Smith had an objectively serious medical need and (2) Dr. Butler was deliberately indifferent to it. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). This he has not even attempted, much less accomplished.

## I. Serious Medical Need

"Serious medical needs" include (1) conditions that are life-threatening or that carry risk of permanent serious impairment if left untreated; (2) those in which the deliberately indifferent withholding of medical care results in needless pain and suffering; or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997). Here, plaintiff alleges that he suffered a TIA. As described in the materials Smith received from the hospital, a TIA is not in and of itself life threatening, nor does it necessarily cause "lasting damage." Rather, a TIA indicates a higher risk of stroke. (Harken Aff., Ex. G (dkt. #26-7) p.4.) As importantly, Smith was not definitively diagnosed with a TIA. Indeed, all of the objective evidence -- a cat scan, MRI, and ultrasound -- indicated that his brain and the blood vessels surrounding his brain were normal. Moreover, based on inconsistencies and

observed physical abilities, both the treating physicians at the hospital and Dr. Butler questioned Smith's credibility in self-reporting symptoms.

To the extent Smith's claim concerns problems with his left foot, Dr. Butler noticed no issues in her physical examination of his foot just two weeks after the claimed medical event. The neurologist Smith saw a few months after the event, Dr. Khabbaz, similarly questioned whether a TIA could cause the problem Smith reported with his foot. This is not to say that Smith did *not* suffer a serious medical event or need. Rather, in failing to oppose summary judgment, Smith specifically failed to put forth evidence from which a reasonable jury could find that he suffered from a serious medical need, whether a TIA or foot numbness or pain.

## II. Reckless Disregard

Even if the essentially consistent hospital records were sufficient to raise a genuine issue of material fact as to whether Smith suffered from a serious medical condition, the court further finds that summary judgment to defendant is warranted because Dr. Butler, and the rest of the staff at Rock County Jail for that matter, were not deliberately indifferent to Smith's medical needs. In *Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010), the Seventh Circuit described the proof required to establish "deliberate indifference":

> [T]he plaintiff must show that the official acted with requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, deliberate indifference is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the

7

> deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Id.* at 620 (internal quotations and citations omitted).

The undisputed record demonstrates that Dr. Butler (1) was aware of and monitoring Smith's condition; (2) had ordered the prescription for the cholesterol medication indicated in his medical charts and Smith received that medication within a short period of time; (3) met with Smith within a few days of his written request and within two weeks of his release from hospital; and (4) ordered additional bloodwork and a neurology consultation. While Smith complained about a lack of physical therapy, the record indicates that nurses provided Smith with exercises. More importantly, Dr. Butler did not find any reason for concern with Smith's foot as part of her physical examination. To the extent that Butler was mistaken or Smith simply wanted a different doctor, that is not a basis for finding deliberate indifference on the part of Dr. Butler. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) ("Deliberate indifference is 'more than negligence and approaches intentional wrongdoing.'"); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) ("[A] mere disagreement with a doctor's medical judgment" does not amount to deliberate indifference.).

Based on defendant's submissions, the court easily finds that no reasonable jury could conclude that Dr. Butler acted with reckless disregard to Smith's medical condition.

ORDER

IT IS ORDERED that:

1) defendant Dr. Karen Butler's motion for summary judgment (dkt. #23) is GRANTED; and

2) the clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 12th day of November, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge
